Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Thank you, and I guess I told everybody to sit down too soon. I apologize. It was Floyd and Richardson and I are pleased to be hearing your cases. The first case on the docket is United States v. Christopher Sueiro. Mr. Gorkoff. Good morning, Your Honors, and may it please the Court. In Ferretta v. California, the Supreme Court held that the right to self-representation is a fundamental right, that it's a right that implicates a person's dignity and autonomy. It's a right with deep historical roots, and in fact, it's a right that's even of a higher magnitude than the right to counsel. The Supreme Court observed in that case that to force a lawyer on a defendant can only lead him to believe that the law contrives against him, and that statement could not be more true in this case. Mr. Sueiro is an individual with a longstanding distrust of the criminal process, and particularly a longstanding and profound distrust of his court-appointed counsel. And Mr. Sueiro throughout this case has been persistently asserting his right to self-representation. He's done that clearly and persistently. So the first question before the Court today is whether the Court should consider the appeal on an interlocutory basis of the fact that the Court is forcing a court-appointed lawyer on Mr. Sueiro in the face of his repeated requests to represent himself. And we respectfully submit, Your Honors, that this case meets all of the Cohen factors, and it is appropriate for interlocutory consideration by this Court. On the first factor, whether it's a final decision, I think that I respectfully submit, Your Honors, that that factor is pretty clear. The judge's order in this case makes it clear that the judge decided this issue as a final issue, that the judge was not going to revisit this issue, that Mr. Sueiro was going to go to trial with his court-appointed attorney. And the controlling case is this Court's case of Cobra Industries, which simply says that if the order is clear, if there's no indication that it will be revisited, it's a final order. Well, how is this order effectively unreviewable after final judgment? How does it qualify under that factor? Yes, Your Honor, a couple of reasons. The way that the first reason is the way that the district – that the Supreme Court framed the right to self-representation is the right not to have a lawyer forced upon you. And the right not to have a lawyer forced upon you is not just merely a trial right. As the Supreme Court held in the McCaskill case, it's a right to the fairness of the criminal process as a whole. Right. And that could be vindicated on appeal, could it not? You wouldn't have to show prejudice. You'd simply show that you were denied your right to represent yourself, and you'd go back to a second trial. I respectfully submit, Your Honor, that it can't be vindicated. And the simplest example of that is the fact that if Mr. Suero went to trial with a court-appointed lawyer and was acquitted, then his right would be gone. It would be evaporated. And that's exactly one of the scenarios that the Supreme Court focused on in the Sell case, in the forced medication case, when it said an individual could be forcibly medicated. How is that different from the right to counsel cases, right? So you've got to sort of start with the right to counsel cases and tell them, I mean, there's not a hierarchy of right. You're not suggesting that the right to self-representation is somehow more important than the right to counsel. I absolutely am, Your Honor. You are. Yes. And that's where I thought you might go. That's the sort of premise for you. If it's not, then you've got trouble here. But yours is based on this idea that somehow the right to represent yourself, not mentioned in the Constitution, is more important than the right to counsel, which is mentioned in the Constitution. Yes, Your Honor. Absolutely. And I think the Ferretta case makes that clear beyond all doubt. I think if the discussion in Ferretta of the right to self-representation versus the right to counsel, the way the Ferretta case describes the right to counsel is merely as a tool that helps the defendant meet the charges against him. The attorney is simply a tool, whereas the historical roots, the historical underpinnings of the right to self-representation is much deeper than the right to counsel. That's what the Ferretta case holds. And secondly, Your Honor, that with respect to Well, it doesn't hold that there's a hierarchy of the two. I think it clearly implies that. The historical discussion in Ferretta clearly implies that. And the way that it talks about the lawyer being merely a tool or an assistant to the defendant, and the Sixth Amendment speaks in terms of the defendant's rights, what the defendant can do, that the defendant can confront witnesses and so forth. Notwithstanding the niceties of the law, how about his conduct that the judge had to before him, such as being talked over, being disrespectful, several things that occurred, and also some hesitation as to whether he would follow the rules or not. What about his conduct? Your Honor, I think the conduct is the conduct. We don't deny it. I think it's interesting between the government's briefs and our briefs, there's really no dispute as to the conduct that occurred. And I would even concede, Your Honor, that if the district court judge in this case said, I am basing my right, I'm basing this decision on your past conduct, and I'm basing this decision on a finding that you are unable to conform your conduct, even though you're behaving yourself now, you're unable to conform your conduct, that might be sufficient. And if the district court then went on to find under Ferretta's standard that he was that's not what happened here. The district court judge in this case said, I'm aware of your past conduct. I've read the record. I know what's going on. But you've turned a new leaf. And in fact, when the government got up and started relying on his past conduct, the district court judge in this case says, quite frankly, I think I know his past conduct, but his behavior here in court today militates in his favor. And so that's our issue with the substantive finding in this case, is that if you're going to take away something as fundamental as the Ferretta right, if you're going to deny a person's request for self-representation, it needs to be done on a both a legally and a factually valid basis. And the order has to be clear. And the order has to make appropriate factual findings. And what we have in this case is the district court saying, I'm aware of the past record, but this defendant has turned a new leaf. But I'm going to deny the right because of his, quote, unquote, hesitancy to answer questions. And that doesn't, quote, unquote, meet the standards of Ferretta. And your honors, I would respectfully submit, what standards was the district court judge talking about? What rules of court was the district court judge talking about? And I just would like to just focus a little bit on the actual order in this case, which is a joint appendix. And the page I'm looking at is 203. In the judge's written finding, the judge says, in light of the Ferretta factors and upon observing the defendant's demeanor, assessing his credibility, and most importantly, discerning his hesitancy to commit to follow the rules of court, the court finds that defendant has not met the applicable standards to establish that he is capable of representing himself. So the question then arises, what are the applicable standards? And then the court goes on to say, among other things, he could not state with certainty whether he reviewed the federal rules of evidence, nor could he remember the specifics about the federal rules of criminal procedure. That's not a valid basis to deny a person the right to self-representation. This court's precedents say that, and the Supreme Court's precedents say, that a person's unfamiliarity with the rules of procedure or the rules of evidence is not a sufficient basis to deny the Ferretta right. And then the court goes on to say, most significantly, during many of the defendant's responses to the inquiries, the defendant pointedly vacillated whether he would be adherent to the applicable rules of court. And I would respectfully submit there, Your Honors, that vacillation as to whether you're going to submit to the rules of court, number one, again, there has to be clarity. Which rules of court? Are they valid rules or are they not valid rules? Number two, vacillation is not sufficient to meet the standard of Ferretta, which is serious obstructionist misconduct. And there has never been a finding in this case by Judge Alston that Mr. Suero engaged in serious obstructionist misconduct or anything that would qualify for a Ferretta denial. And then I would just point out that after referring to the rules of court, the court is referring to something that's not even a valid basis to deny the Ferretta right. So our position here is simple, is that if a court is going to deny this right, it has to do so clearly and it has to articulate its reasoning clearly. And the analogy to that, Your Honors, is the Chatman case from this court, which was a forced medication case in which this court reversed because the district court did not articulate its reasoning why there were no alternatives to forced medication. This is a very analogous case to that context. Do you acknowledge that there is a distinction between criminal and civil cases in terms of representation? I do and I don't, Your Honor. On the one hand, I accept the government's distinction that a person who's denied self-representation in the civil context may effectively lose the chance to litigate their case. So in that sense, it's true. Well, the reason I ask that question is it seems that you only cited civil cases. That's correct, Your Honor. We cited civil cases because we – our position is that if a person is entitled to represent themselves pro se in a civil case, then certainly, certainly a person should be allowed to represent themselves pro se in a criminal case where their freedom is at stake and where they have an actual constitutional right, unlike a civil case and a criminal case. They have a constitutional right to represent themselves that's in the Sixth Amendment. And to the extent that we take away that right and the importance of what's at stake, yes, it doesn't preclude the defendant from litigating his case, from defending himself through an attorney. But on the other hand, it does take away a right, again, that has been recognized as, I think it's no exaggeration to say, super fundamental by the Supreme Court. And that's really why, Your Honors, we submit in light of the Sell decision in 2003 or 2004, I think it's clear that the linchpin of interlocutory appeal, the linchpin, is the importance of the right at issue, the importance of the right at issue. Well, Mr. Gorkoff, before you sit down, I think you really do need to address the elephant in the corner, though, and that's Flanagan and the dictum that's pretty straightforward and pretty strong. Could you tell us why we shouldn't be guided by that dictum in Flanagan? Absolutely, Your Honor, because for a couple reasons. Number one, in the beginning of the Flanagan case, it's clear, and from subsequent case law, that Flanagan is an extraordinarily narrow case. I mean, Flanagan talks about choice of counsel, but then there's Supreme Court cases about disqualification of counsel, separate case, about refusal to disqualify counsel, separate case. So if all of these separate, narrow distinctions had to be made by the Supreme Court in separate decisions, there would be — Right. But I'm referring you directly to the language where the Supreme Court at page 267 says, if establishing a violation of an asserted right requires no showing of prejudice to the defense, which would be true in this case, a pretrial order violating the ruling regarding counsel does not meet the third condition for coverage by the collateral order exception because it is not effectively unreviewable on appeal upon a final judgment. So how — why isn't that applicable here? I realize Flanagan was a different case, but the principle seems to be transferable here. Why not? Sure, Your Honor. There's a simple answer, that whatever that reasoning meant, and I would submit that reasoning is — logically breaks down because either if it's structural error, you don't get — you don't get interlocutory appeal. If it's bound up with the merits, you don't get interlocutory appeal. So you never get interlocutory appeal. But we know that's not true because in the Sell decision — in the Sell decision just eviscerates that passage. Well, that's self-medication. I mean, it — I mean, that is a — substantively a different subject, isn't it, than the issue of counsel and whether you have to have counsel and whether you want to represent yourself? I agree it's absolutely different in — factually speaking, but I think the question for this Court in light of Sell is, what is the magnitude of that right? Is the magnitude of the right to self-representation comparable to that of not to be forcibly medicated, or is it comparable to something that's like counsel of choice or some lesser right? We respectfully submit, Your Honors, that the magnitude of the right, as discussed in Ferretta, is similar to forcible medication. Okay. And that's the basis for interlocutory appeal. Thank you, Your Honors. All right. Thank you, sir. We'll hear from the government. Good morning, Your Honors. May it please the Court. Kellen Dwyer for the United States. Ferretta claims are effectively reviewable on post-judgment review, and we know that because this Court routinely reviews Ferretta claims on post-judgment review. But we don't have any precedent, though, in this circuit, right? Not any published precedent. There are three unpublished decisions on point, Your Honor, which we cite in our verse. Right, regarding published cases. That's correct, Your Honor. But as you pointed out, there is the Supreme Court's decision, which is really directly on point in Flanagan. Now, in the event, in the rare event that this Court finds Why don't you respond? I took his argument to be, no, Flanagan's not on point because the implied constitutional right of self-representation is vastly more important than the sexually grounded right to counsel. And so Flanagan, which just dealt with, like, lawyers, tools, I don't think he's talking about you specifically, but that, like, that they aren't that important, but self-representation that the Court implied out of the Sixth Amendment in Ferretta, that that's the, like, foundational bedrock of our nation. And so since it's that important, we ought to distinguish Flanagan. What's your response to that? Two points on that. First, the Supreme Court just last term in McCoy v. Louisiana really linked the Ferretta right and the choice of counsel right. And so these are both about, quote, the Sixth Amendment secured autonomy. And because they're about autonomy, both of them get what is very special in our system, a presumed prejudice. They don't have to show prejudice on post-judgment review. And that is how we take account of the importance and the kind of distinct autonomy nature. But what Flanagan says is you don't get both. You don't get both the waiver of the prejudice rule and the interlocutory appeal because under Flanagan, the waiver of the prejudice is how we know that post-judgment review is going to be effective. But on your second point, and I think counsel was quite transparent about what he's asking this Court to do, he said again and again that the importance of the right is the linchpin. And the way I'm distinguishing it is because Ferretta is up here and other constitutional rights are of a lower order. That is flatly inconsistent with what the Supreme Court has said. The question is supposed to be about the effectiveness of the review. And I would submit that if the Court adopts this theory that if the right is somehow super important or super fundamental, defense counsel's words, that review is somehow then ineffective, the Court's going to be in a very other constitutional rights, which are in the text, are not as important as Ferretta. Or, in recognizing new interlocutory appeal exceptions, which the Supreme Court has said shouldn't be done, that they should be with the utmost scrutiny and the utmost guarded nature of the limited exceptions of the final judgment rule. So, for instance, a defendant could make any number of constitutional claims and move to dismiss a claim, or move to dismiss an indictment under the First Amendment or the Second Amendment, or void for vagueness Fifth Amendment Equal Protection Clause, ex post facto, or move to suppress under the Fourth Amendment. And then if the motion's denied, could come to the Court on interlocutory appeal and say, these are, of course, very important rights and I'm suffering irreparable injury because, in my view, I'm being prosecuted in violation of my rights and I'm potentially detained, or otherwise my freedom is being restricted. So, I submit that kind of ranking constitutional rights as a matter of importance is really not what the Supreme Court has asked this Court to do in this context. Instead, it's a question of effectiveness. And I thought that kind of the difference was made clear in the Mohawk case, the Supreme Court, in 2009, where the Court says that the crucial question is not whether an interest is important in the abstract. It's whether a deferring review until final judgment so imperils the interest as to justify the cost of immediate appeal of the entire class of relevant orders. We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system. So, the question is not whether it's important, but can it be vindicated? And when we're talking about a trial right, there clearly can be vindication and effective remedy post-judgment. And that's to order a new trial, which is what the Supreme Court did in Ferretta itself. The remedy in that case was to vacate the conviction and order a new trial. Your Honor, if there's no other questions. I have one question. At the hearing where the judge said, you know, he seems to be behaving himself today, I thought that the defendant also said he was likely to follow his own law. Am I right about that? Yes, Your Honor. If I could give some context, I might make that clear. So, as we try to demonstrate in the briefs, there was a whole history of over a year of the defendant interrupting pretty much every court hearing and routinely talking over the judge three times being removed. After the first denial of the Ferretta motion in January, there was a trial set for March. Defense counsel actually filed a motion for a new competency hearing because in his view, his client wasn't even competent to stand trial at that point, much less represent himself. The motion was granted. The defendant received mental health treatment. And when he comes back, defense counsel moves to reconsider the Ferretta motion, which, in fact, goes to our first point that is not a final motion, that as a class, Ferretta can be reconsidered. But at that point, there was a third Ferretta hearing, and at the hearing, the defendant did refrain from interrupting the court, and the court commended him for not interrupting and said that was something that weighs in his favor. But at the same time, he was asked five different times by the court, will you agree to abide by the rules of court? And every time, the defendant would posit the same theory he'd been saying for over a year, which is that the letter of the law trumps the court's ability to decide, you know, the court's rulings or ability to decide who speaks when. And in his view, if something kind of, he has a kind of, the letter of the law gives him this unmitigated right to speak in his own defense and to speak over the judge. So five times, he was asked by the court, will you abide by my rulings going forward? And five times, he refused to say he would do that. So I think what the court's ruling is, is that even though he didn't interrupt in this case, he has a whole history of interrupting, of violating the court's rulings. And he's refusing to even promise that he won't do it in the future. And in that instance, I believe that the court was clearly within its discretion to find that the defendant, and this was the ruling, it wasn't just that he hesitated. It was that he was inclined only to follow the rules that he thought fair to him. So I think it, I don't believe the court should get to the merits in this case, but I think I'd be remiss if I didn't point out that we had two judges over the life of this case that were assigned. Neither of them was hostile to Ferretta or in any way trying to take away the opportunity to make the basic concession that the rules apply to him just like everyone else, and he simply refused to do that. So it wasn't the court that's forcing a lawyer upon Mr. Suero. It's Mr. Suero who has done this to himself. If there are no other questions, Your Honor, I'd yield my time. Thank you. Thank you. Mr. Gorkoff, do you have a rebuttal? Thank you, Your Honor. I would first, I'll start with the last issue first, Your Honors, that when the found that Mr. Suero was, quote-unquote, hesitant to follow the rules. What the government would like that to mean is that the district court made a finding that Mr. Suero, despite his changed behavior, was going to behave like he did in the past, which we would concede, Your Honors, would be a valid basis not to allow him to represent himself. But that's not what the court found. And that's the issue with this order, and that's the issue with this Vareta hearing, is that the court seemed to say, I'm familiar with the record, but you've turned a corner. You're acting differently now. And now he's saying, well, because of your vacillation and hesitancy to follow the rules of court, which we don't know if he's referring to valid rules or not valid rules, or rules of evidence which aren't a valid basis for consideration, I'm going to deny the Vareta right. So it's not a sufficient order when something this important is at stake. I'll go back to the issue of interlocutory appeal and a couple points the government made. The government got up here and said ranking is not an appropriate thing. Ranking rights is not an appropriate thing for this court to do. That's exactly what the Supreme Court did in the Sell case. And in fact – Right, but Sell, the issue of forced medication was something that couldn't be remedied on appeal. I mean, once you've medicated somebody against their will, it's over. You can't review it. So that's why I don't think Sell really works for you. The question isn't the determinative question we have to face is can this error be remedied on appeal? And I think the answer to that, Your Honor, is no. And I would respectfully point out I think Sell does very directly apply. And here's an example that I think illustrates the issue. If a defendant, let's say it's a civil rights case, and the defendant is charged like in pre-civil rights times, charged with trespassing because of his race, a place he's not supposed to be. And he wants to go to trial and preserve his constitutional right. He's willing to be convicted and go up on appeal to preserve his constitutional right. And he gets an attorney who says, you know what, I'm going to defend on the merits. And the defendant ends up being acquitted on some legal point or some factual point. That's not the defendant's wishes. And he's acquitted in his right to represent himself and present the case he wants to present. Well, he probably wouldn't have a problem, though, would he? Well, I think he would, Your Honor, because in that context, he would want to tell his story the way he wants it to be told, which is to challenge the constitutionality of a racist law. And he would be deprived of that opportunity forever by having an attorney who refuses to do what he wants. In this case, or in another example, an individual might not want to blame, for example, a relative or a close friend. His attorney might say, the only way for me to effectively represent you is to blame your relative or friend. And so the defendant ends up going to trial with the lawyer who's imposing something that the defendant is not willing to do, even at the risk of conviction. So I think these cases illustrate how it's not effectively reviewable. Another point, Your Honor, is from the Godinez case from the Supreme Court, where it wasn't even about the right to trial. It was about the defendant's right. It's a process right. It's a right that attaches when you are charged. And in the Godinez case, the defendant wanted to enter a guilty plea, pro se. And that's what he did in that case. And so, Your Honor, it's not merely just a right that, you know, you go to trial or you're convicted or, you know, if you're acquitted, then your right is somehow magically vindicated. It's exactly like the Sell case in that respect, where the Supreme Court said, yes, we can review for error whether Sell's forcible medication caused him some kind of a disadvantage at trial. We can review that after the fact. But we can't review the fact that he effectively lost the right by being forcibly medicated. And I think this case is directly analogous in that respect. And, in fact, I can represent to this Court that Mr. Suero, and I think it's clear from the record that Mr. Suero has ideas about representing himself in this case that are different than those of his counsel. And he's not being allowed to vindicate that right. And it's gone. I would also point out, Your Honors, that the government mentioned that there was we know that post-conviction review is effective because this Court routinely reviews foreta cases post-conviction. The same thing can be said of double jeopardy cases. The same exact thing can be said of double jeopardy cases where this Court routinely reviews them after a conviction. But that doesn't mean there's no interlocutory appeal right. So that logic just doesn't hold. Your Honors, thank you for your patience. And if there are no further questions, I will conclude. Okay. Thank you, Mr. Gorokoff. And I noted here from the record that you have been court appointed. The Court appreciates your service. We couldn't do our work without you. So thank you very much. We'll come down and greet counsel, and then we'll call the next case.
judges: Barbara Milano Keenan, Henry F. Floyd, Julius N. Richardson